SAMUEL STONE *v.* DAVID HUGGINS.

*Assumpsit. Liability of the defendant upon the facts reported.*

The plaintiff having, at the request of the defendant, who was one of the selectmen of the town of Windsor, taken the highway tax bill of one of the districts in said town, and having made expenditures of labor and money in the necessary repairs of the highways in said district to an amount largely exceeding all that he was able to collect on said tax bill, which he had been unable to recover of said town; it was held that upon the facts found and reported, the defendant had assumed, and was under no personal liability for the same.

BOOK ACCOUNT. The auditor reported substantially as follows. At the annual March meeting of the town of Windsor, in the year 1848, the defendant was chosen first selectman of said town, and took upon himself the duties of said office; and at said meeting, Joel S. Houghton was appointed highway surveyor for district No. 5, in said town. In the latter part of May, 1848, the defendant went to Houghton with the tax bill and told him he was appointed surveyor for said district. Houghton declined to take the bill, and

thereupon the defendant told him if he would take the bill and re-
ceipt it, and go around one day with it, and see who would work
and who pay money, that he, (Houghton) should be at no further
trouble with the bill: Houghton did thereupon take and receipt
said bill upon that understanding, and went round with it as
requested, and notified the tax payers of the time to work upon said
bill. Some few days afterwards, Houghton met the defendant and
told him he must take the tax bill and work it out, or get some one ;
that he, Houghton, should do nothing more about it ; and thereupon
the defendant inquired of him who would be a good hand to take and
work out said tax bill ; the plaintiff was named as being a good hand
for that purpose, and Houghton and defendant concurred that he
would be ; and the defendant requested Houghton to request one
Bridge to tell the plaintiff that the defendant wanted him to come and
take said tax bill and work it out.   In some short time after this, the
plaintiff called at said Houghton's in pursuance of the word sent to
him by the defendant through said Houghton, and said Bridge,
(which was given to the plaintiff by said Bridge,) and got said tax
bill with the consent of Houghton ; and after the plaintiff thus got
said tax bill, he saw the defendant on the subject, who told him he
wanted him to take charge of the work on the roads in that district ;
and thereupon the plaintiff notified the tax payers set in said bill ;
and on the 5th of June, began work in repairing the highways in said
district, and so continued, with occasional intervals, till the 24th of
August, 1848.

The plaintiff presented his account, in which the charges were for
labor and materials performed and furnished by the plaintiff, in
and about the work and repairs on the highways, in said district,
and in collecting said taxes, by reason and as the result of what
had occurred in relation thereto, as above set forth.   There were
two of said highways, one called " the brook road," the other " the
brick-yard road."   In the repairs made on said roads by and under
the plaintiff, twenty-one dollars were paid in labor by the tax-pay-
ers named in said bill, and performed and laid out on said brook
road.   The residue of the expenditures therein was embraced in the
plaintiff's charges in his account.   The plaintiff collected in mon-
ey, on said tax bill, seventy-two dollars and four cents.   Of the
plaintiff's charges for labor by himself and others, about ninety-

five dollars were for repairs upon the "brick-yard road," which were not commenced till those on the brook road had been completed. The first work done on the brick-yard road was on the 29th day of June, 1848. The tax-bill amounted to $269.83. At the time the plaintiff began work on the 5th of June, and up to the time he went to work on the brick-yard road, the last named road was badly out of repair, and difficult and dangerous to use. During the progress of the work on the brook road, the defendant told the plaintiff that the brick-yard road must be repaired. About the time the work on the brook road was finished, in conversation between the plaintiff and defendant, about the work on, and repairs of the highways in said district, the plaintiff informed the defendant that the money which he had been able to realize from said tax-bill was nearly exhausted. The defendant told the plaintiff that the brick-yard road must be fixed at any rate. The plaintiff thereafter went on and fixed said road, for which he has charged in his account. The repairs made by and under the plaintiff, were needed and properly made, as well upon the brook as upon the brick-yard road.

The plaintiff had no authority by law, to enforce the collection of the taxes in said bill; he collected all that he could without authority, and made all reasonable effort to collect more. For time spent in and about making such collection, he charged in his account. During the time the plaintiff had said bill in his possession, he applied to the defendant, as one of the selectmen to give him authority to enforce the collection of said taxes, or to put said bill into the hands of the constable to collect; and once in the summer of 1848, and after the work on the highways was finished, the plaintiff informed the defendant and Peter Houghton together, (said Houghton then being one of the selectmen of said town of Windsor,) that a portion of the taxes aforesaid were uncollected, and that he could not collect them without authority, and requested them to give him authority in that behalf, which they declined then to do, and never did do. The tax-bill remained in the plaintiff's hands till the spring of 1849, at the time the selectmen of 1849, (of whom the defendant was one,) were making out the highway taxes for that year, when the defendant went to the plaintiff's house, in plaintiffs absence and got said tax-bill to use in making

up the new tax-bill, and thereupon the uncollected arrears of said tax-bill of 1848, were carried forward and embraced in the tax-bill of 1849, in pursuance of the usage in said town in that respect. This was done without objection or claim to the contrary on the part of the plaintiff. The plaintiff, in taking said tax-bill and doing what he did in respect thereto, and making the repairs on said highways, supposed he was acting by the procurement of the selectmen of Windsor, and that the town would pay him for his services and expenditures, and had no thought or suspicion to the contray, till some time in May, 1849, after said tax-bill had been taken from him, when he made application to the selectmen in that behalf, and they declined to recognize or pay his claim, and denied the liability of the town therefor. The defendant made no other employment of the plaintiff than is above set forth, and gave no other direction to the plaintiff, as to what work, or what amount of work to do, or expenditures to make, than is above set forth, and the plaintiff had no other directions from any source except what was contained in the warrant appended to the tax-bill. It did not appear that the plaintiff was ever employed by the defendant, or by any person acting in his behalf, to perform any labor or make any expenditures on said highways, with the understanding on the part of either, at the time of such employment, or while said work and expenditures by the plaintiff were going on, that the same were upon the credit of the defendant, nor that the defendant ever recognized the same as having been performed or made on his credit. None of the selectmen of Windsor, for the year 1848, except the defendant participated in the employment of the plaintiff, and what was done in that behalf, was the sole act of the defendant, though it did not appear that this was known to the plaintiff till sometime in May, 1849, when his claim and the liability of the town was denied.

· It did not appear that the plaintiff had authority from the defendant, or any one else, except as above set forth, to exceed or anticipate the available amount of the tax-bill, in his services and expenditures, nor that he was aware, except as above set forth, that he was exceeding or had exceeded the amount he was able to collect on said tax-bill, till after said work was completed; nor did it appear that, in his said work and expenditures, the plaintiff did ex-

ceed what might have been collected by him on said tax-bill, if he had had full authority in law to enforce such collection.

The plaintiff brought a suit against the town of Windsor and West Windsor, (said towns prior to January 1st, 1849, constituting the single town of Windsor, but were at that time divided in pursuance of an act of legislature,) at the May Term, 1850, of the Windsor county court, being an action of book account, to recover the same account for labor and expenditures, that the present action is brought to recover of the defendant, in which first named action, final judgment was rendered for the defendants by the supreme court, at a special term in June, 1851.

The auditor reported $135.85 as the balance due to the plaintiff, subject to the opinion of the court as to $41.50 for which the plaintiff had become liable under circumstances detailed in the report, but which he had not actually paid—a more particular statement in reference to which is rendered unnecessary by the decision of the court in reference to the entire claim. The auditor also made an additional report, the only part of which, which it is necessary to set forth, being sufficiently stated in the opinion of the court.

The county court, December Term, 1855,—UNDERWOOD, J., presiding,—rendered judgment *pro forma* for the plaintiff to recover the largest sum reported.

*W. Currier* and *Washburn & Marsh* for the defendant.

*Coolidge & Safford* for the plaintiff.

The opinion of the court was delivered, at the circuit session in October, by

BENNETT, J. This is an action on book, in which the plaintiff seeks to recover of the present defendant his account for certain expenditures in repairing two certain roads in the town of Windsor, in 1848. The case comes up under somewhat peculiar circumstances, and we have endeavored to give it our careful attention.

It is not claimed, by the plaintiff's counsel, that the services and expenditures charged in his account were had upon the personal credit of the defendant; and in this they take a right view of the case. It is clear to my mind, from the auditor's report, that the

plaintiff rendered the services and made the expenditures, expecting to be reimbursed for the same, from the avails of a tax-bill, which was put into his hands to work out.

The plaintiff puts his case upon the ground that the defendant contracted with him to do what was done in behalf of the town, and upon their credit and responsibility, and that having failed to give him a legal remedy against the town, he has made himself personally responsible, and that too in this form of action.

It is a common principle, that when a person undertakes to act as an agent for another person, and in his name, without authority for that purpose, and this unknown to the other party, the person assuming to be agent, makes himself personally responsible.

We are met at the threshold of this case with the inquiry whether, upon anything like a fair construction of the report itself, the defendant undertook to bind the town to pay the plaintiff's account. If not, there must be an end of the plaintiff's case, without going further. It becomes necessary to attend carefully to the facts reported by the auditor. It seems Joel S. Houghton was appointed highway surveyor for District No. 5 in Windsor, in 1848; and as such he received the tax-bill, and assumed the responsibility of highway surveyor. It does not seem to be of importance, in one point of view, what induced Houghton to accept the office, or what were his motives in not going on himself to work out the tax, or what arrangement had been made between the highway surveyor and the defendant in regard to the highway surveyor's having no further trouble with the tax-bill, in case he would go around one day with it and see who would work and who would pay the money. The highway surveyor had become legally responsible to the town for the faithful expenditure of the tax, in repairing the roads in his district; and, while under this responsibility, he says to this defendant, "he must take the tax-bill and work it out or get some one to do it," which was acceded to by the defendant. Word was sent to the plaintiff by the defendant, that he wished him, "to come and take said tax-bill, and work it out." It seems that this application was made to the plaintiff with the concurrence of the surveyor in the plaintiff's being a suitable man to expend the tax. The plaintiff called upon the surveyor accordingly, and got the tax-bill, by the consent of the surveyor; and, when the plaintiff

called on the defendant with the tax-bill, the defendant, knowing that he had got it, said to him, "he wanted he should take the charge of the work on the highways in said district," and, thereupon the plaintiff proceeded to notify the tax-payers set in said tax-bill, to work out their taxes, and he went on to make the repairs on the roads. What was said about the plaintiff's taking charge of the work on the roads, in that district, is to be taken in connection with the request which had been made to him, to get the tax-bill and work it out, and, so it was evidently understood by the plaintiff; for the auditor, in his additional report, expressly finds that when the plaintiff entered upon the business of his employment, as set forth in his first report, he supposed the tax-bill would be available for means of making the needed repairs of the roads in the district, and relied upon said tax-bill for said means; and it appears that, in point of fact, the amount of the tax-bill was more than sufficient to meet all the claims which the plaintiff can make for services and expenditures in repairing the roads in said district, although the plaintiff, not having any legal power to collect the tax-bill himself, failed to realize enough to meet his just expenditures. Here, then, is a case where there had been a fund provided by means of a highway tax, duly assessed, amply sufficient for the purpose of repairing the roads in the district, now in question; and, while that remained unexpended, it may well be questioned whether the highway surveyor himself could maintain an action against the town for expenditures which he might make in repairing the roads. We see no reason, thus far, to say that there was any attempt, on the part of this defendant, to bind the town. The most that can be claimed is, that the defendant, with the approbation of the highway surveyor, employed the plaintiff to work out the tax-bill for that district, and pledged *that*, as a fund which the town had provided, as the means of his remuneration. This is quite a different thing from employing the plaintiff to do the services on the general credit of the town. In the case of *Gassett* v. *Andover*, 21 Vt. 342, in which it was held that the selectmen of a town might direct the highway surveyor of a district to repair a road upon the general credit of the town, it appeared that the whole tax had all been previously expended, and this known to the selectmen at the time the direction was given. The auditor, it is true, finds that after it be-

came manifest, as the result of the plaintiff's efforts to collect the taxes on said bill, that his collections would prove inadequate to meet the expense of the repairs, he went on making further expenditures, supposing that the town would reimburse him for so much as his expenditures should exceed his receipts on said tax-bill; and though this might have been a reasonable expectation, on the part of the plaintiff, yet it is not found that he received any such assurance from the defendant, or that this was within the scope of his original employment.

It becomes necessary to inquire whether the employment was subsequently enlarged by the after conversation between the parties to this suit, and did the plaintiff so understand it. It seems that the expenditures of the plaintiff were made upon two roads, one called "the brook road," and the other "the brick-yard road." The repairs were first made on the "brook road," and the auditor finds that while the repairs were going on, on "the brook road," the other road being much out of repair, the defendant said to the plaintiff, "the brick-yard road must be repaired;" and after this, and when the repairs of the brook road were nearly finished, in a conversation between the parties about the repairs of the highways in the district, the plaintiff informed the defendant that the money *that he had been able to realize from said tax-bill* was nearly exhausted, and the defendant said to him, "the brick-yard road must be fixed at any rate."

It is found in the case that the tax-bill then in the hands of the plaintiff, amounted to two hundred and sixty-nine dollars and eighty-three cents, and the amount collected on the bill, in money and work, was found to be ninety-three dollars and sixty-three cents, leaving a balance of one hundred and seventy-six dollars and twenty cents. The balance which the auditor reports as provisionally due to the plaintiff, is but one hundred and thirty-five dollars and eighty-five cents. Under the circumstances of this case, how should these general declarations of the defendant be interpreted? and how did the plaintiff understand them? and how had he a right to understand them? We apprehend they should not be understood as attempting to give the plaintiff authority to exceed, in his expenditures, the avails of the tax-bill in his hands, upon the credit of the town, but simply as *cau-*

*tionary* to the plaintiff, that enough should be reserved of the tax-bill to repair the brick-yard road, at all events. This, we think, is all that the plaintiff was authorized to infer from these general remarks of the defendant. Though the report finds that the plaintiff, in doing what he did do, supposed he was acting by the procurement of the selectmen of Windsor, yet in this he was mistaken. Though, in point of fact, the defendant was one of the selectmen of Windsor, yet the case does not find that he assumed to act in that capacity for himself and his associates, or that there was any representation made, directly or indirectly, that he was clothed with any power from his associates to act on their joint account; and the auditor finds, " that what was done in regard to the employment of the plaintiff was the sole act of the defendant;" and it may be remarked that the auditor does not find that the defendant, in doing what the case shows he did do, undertook to act as one of the selectmen of the town. From the whole case, I think it is fairly to be inferred that the defendant was acting in the place of Houghton, the highway surveyor, and attempting to to see performed duties that had devolved upon him in respect to the expenditure of the tax. It had become the imperative duty of Houghton to see the tax-bill expended in the repair of the roads, if need be, in his district, and the defendant had assured him, after he had done certain things, he should have no further trouble with the bill; Houghton performed the things stipulated, and the defendant caused the tax-bill to be obtained from Houghton for the purpose of being worked out by the plaintiff, a man approved of by Houghton, as well as by the defendant; and, by a fair construction of the report, the defendant must be regarded as acting, in point of fact, as the substitute of Houghton. In the case of *Smout* v. *Ilbery*, 10 Mees. & Wels. 1, the point how far an agent is personally liable, who, having, in fact, no authority, professes to bind his principal, was very much discussed; and it was said by Baron ALDERSON, as the result of an examination of the authorities, that "all the cases in which the agent has been held personally responsible, will be found to arrange themselves under one or the other of three classes. In all of them," he says, " it will be found that he has been guilty of some fraud; has made some statement which he knew to be false; or has stated, as true, what he did not

41

know to be true, omitting, at the same time, to give such information to the other contracting party, as would enable him, equally with himself, to judge as to the authority under which he proposed to act." There is nothing in this case to show any fraud in the defendant, nor is it pretended that he made any statement which he knew to be false, nor can it be claimed that he stated, as true, what he did not know to be true, omitting, at the same time, to state some fact which would enable the other party to judge of the authority under which he proposed to act, as well as himself. Indeed, it is all sufficient, for this case, to say that the defendant did not, as one of the selectmen of the town, assume, in any shape, to give to the plaintiff a right of action against the town.

Though it should be held, upon the facts, as appearing in this bill of exceptions, that the plaintiff could not sustain an action against the town, yet that affords no sufficient reason for holding the defendant liable.

The want of power in the plaintiff to enforce the collection of the taxes, was as well known to the plaintiff as to the defendant, and cannot have the effect to create a personal liability on the defendant to pay the plaintiff's account. The fact that the selectmen refused to give the plaintiff the means of enforcing the collection of the tax-bill, cannot have any such effect, and, if such a refusal constitutes a wrong which can be redressed by an action, it must be by a special action on the case. The fact that the town have had the benefit of the taxes which remained uncollected by the plaintiff is no reason why the defendant should be liable, in this action; and, whether the plaintiff had such an *equitable lien* upon those taxes as would enable him to follow them in the hands of the town, it is not necessary to consider, and, much less, to decide; although, apparently, as the town have had the full benefit of the plaintiff's expenditures, and have withdrawn from him the tax-bill, which he had a right to rely upon as a means of his indemnity, it would seem to be a common act of justice that they should pay the plaintiff's account. As between the parties to this suit, the case stands upon strict right. The defendant has had no special benefit from the plaintiff's expenditure, and it may be as hard for the defendant to pay the plaintiff's account as it is for him to lose it.

The result must be, the judgment of the county court is reversed, and judgment on the report for the defendant to recover his costs.